## In re TOYOTA OF YONKERS, INC., Debtor.

### Bankruptcy No. 91 B 21514.

United States Bankruptcy Court, S.D. New York.

Jan. 15, 1992.

---

Kurtzman & Haspel, Spring Valley, N.Y., for Toyota Motor Distributors, Inc.

Leonard E. Lombardi, and Christopher Riley, Scarsdale, N.Y., for debtor.

## DECISION ON MOTION FOR AN ORDER DISMISSING CHAPTER 11 PROCEEDINGS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Toyota Motor Distributors, Inc. ("Toyota") has moved pursuant to 11 U.S.C. § 1112(b) for an order dismissing the debtor's Chapter 11 case, or, in the alternative, for an order in accordance with 11 U.S.C. § 362(d) granting relief from the automatic stay so as to proceed with the termination of the debtor's automobile franchise agreement with Toyota. The Bank of New York ("BNY") which foreclosed on its secured interest in the debtor's automobile inventory and equipment, joined in support of Toyota's motion. The debtor opposes the motion and asserts that as a result of a recent sale of all of the debtor's equity to a new entity who operates a successful automobile dealership, the debtor is now in a posi-

tion to propose an effective plan of reorganization.

### FINDINGS OF FACT

1. On October 1, 1991, the debtor, Toyota of Yonkers, Inc., filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code and continued to operate its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Since March 31, 1979, the debtor had been engaged in the sale and servicing of Toyota automobiles in Yonkers, New York under various franchise agreements with Toyota. The last dealer agreement between the debtor and Toyota was dated November 10, 1989 and expired pursuant to its terms on November 19, 1990.

3. The dealership agreement authorized the debtor to sell Toyota automobiles at 1980 Central Park Avenue, Yonkers, New York, and to maintain parts and service facilities at 232 South Broadway and 7 Undercliff Street, Yonkers, New York. The dealership agreement expressly provided that the debtor could not use the parts and service facilities as additional sales locations.

4. Initially, the debtor was wholly owned by George DeLisi ("DeLisi"). However, DeLisi sold 49% of his stock interest in the debtor to Rafael Almonte, who thereafter actively managed and operated the debtor's business.

5. In September of 1991, BNY, which provided floor plan financing to the debtor to enable it to purchase new automobiles from Toyota, claimed that the debtor had violated the financing agreement with BNY. BNY contended that the debtor failed to pay to Toyota over $1 million for automobiles subject to the floor plan financing agreement with BNY. Accordingly, BNY terminated its financing agreement with the debtor, and on September 19, 1991, BNY obtained an order of replevin and seizure from the New York State Supreme Court, Westchester County. On September 24, 1991, BNY replevied the debtor's automobile inventory and equipment located at the debtor's premises.

6. On September 20, 21, 22 and 23, 1991, Toyota's representatives visited the debtor's premises. They observed no sales activities. They were able to gain access to the premises by the back doors because the front doors were locked. Toyota's representatives observed that there were only a few employees on the premises and that the front door had a sign affixed thereto which read "Closed until Monday." Thus, Toyota concluded that the debtor had closed its business and was no longer in operation.

7. The debtor maintains that it had employees on its premises and that it continued to service automobiles on September 19, 20, 21, 22 and 23 and that it was forced to discontinue operations when the sheriff seized its automobiles and equipment on September 24, 1991 pursuant to BNY's replevin action. The dates are significant because Toyota contends that for seven consecutive days, commencing with September 19, 1991, the debtor's dealership was closed in violation of the terms of the dealership agreement, with the result that Toyota could terminate the dealership agreement for cause.

8. By letter dated September 20, 1991, Toyota informed the debtor that Toyota "*shall terminate* your Toyota Dealer Agreement effective ninety (90) days after receipt of this letter for the reasons set forth below." (emphasis added). The letter then specified four alleged breaches of the dealership agreement, including the charge that the debtor sold vehicles from locations not authorized in the dealership agreement. However, there was no evidence that Toyota took any further action to terminate the dealership agreement ninety days after the September 20, 1991 letter. Indeed, Toyota could not take any further action after 90 days because the automatic stay imposed under 11 U.S.C. § 362 when the debtor filed its Chapter 11 petition on October 4, 1991 enjoined Toyota from interfering with property of the debtor's estate.

9. On September 27, 1991, Toyota again notified the debtor of the termination of

the dealership agreement in the following words:

This is to notify you pursuant to New York Vehicle and Traffic Law Section 463 [(2) ](d)(2)(ii) and Section XX.B.1.a of your Toyota Dealer Agreement effective fifteen (15) days from you receipt of this notice for the following reason:

• Toyota of Yonkers has been closed and has not conducted its business during its customary hours for the following consecutive business days: September 19, 20, 21, 22, 23, 24, 25, 26 and 27, 1991.

This notice does not constitute a waiver of any of Toyota Motor Distributor's rights under its previous notice of termination to you dated September 20, 1991.

10. The September 23, 1991 termination notice from Toyota to the debtor was predicated on the New York Vehicle and Traffic Law § 463(2)(d)(2)(ii), which permits the termination of an automobile dealer's franchise if the dealer fails to conduct its customary sales and service operations for a continuous period of seven business days.[1]

11. The debtor disputes that its business operations were closed on the consecutive days of September 19, 20, 21, 22 and 23, 1991. It contends that its operations continued until its inventory and equipment were seized by the sheriff on September 24, 1991 pursuant to BNY's replevin action. Various former employees of the debtor testified that they were on the job and working during the period in question up to the sheriff's seizure of the debtor's assets. It appears that the debtor's premises were not closed down and it did conduct some operations, including servicing of automobiles, up to September 24, 1991, although such operations do not appear to have been at full scale.

12. On Friday, January 10, 1992, a little over three months after the filing of the debtor's Chapter 11 petition, Mr. Louis Pandolfo ("Pandolfo"), the owner of a successful Pontiac dealership in Scarsdale, New York, acquired a 100% stock interest of the debtor. Pandolfo seeks to infuse new capital into the debtor and to propose a plan of reorganization whereby he will operate under the Toyota franchise and cure all the debtor's defaults under the dealership agreement. Pandolfo also proposes to file a plan on behalf of the debtor which will be sufficient to pay all administration and priority claims as well as some payments to general unsecured creditors. In the event that this case is either dismissed or converted for liquidation under Chapter 7 of the Bankruptcy Code, the unsecured creditors will receive nothing.

13. Toyota opposes Pandalfo's proposal on the ground that it has not consented to his acquisition of the debtor's stock and that such approval is necessary under the debtor's dealership agreement with Toyota. Furthermore, Toyota maintains that the debtor's dealership agreement was terminated as a result of Toyota's termination letter dated September 20, 1991. In any event, Toyota reasons that the debtor's franchise terminated on November 19, 1991, which was the last day of the franchise agreement pursuant to its own terms. Hence, Toyota asserts that a franchise agreement that was validly terminated before the filing of the debtor's Chapter 11 petition cannot support any post-petition plan of reorganization.

### DISCUSSION

■ Some courts have addressed the question as to whether or not, as a matter of law, a post-petition debtor in possession in a reorganization case should be viewed

---

**1.** New York Vehicle and Traffic Law states that a franchisor may terminate the franchise ... [for] the failure of the franchised motor vehicle dealer to conduct its customary sales and service operations for a continuous period of seven business days, except for acts of God or circumstances beyond the direct control of the franchised motor vehicle dealer or when any license required by the franchised motor vehicle dealer is suspended for a period of thirty days or less, or (iii) insolvency of the franchised motor vehicle dealer, or filing of any petition by or against the franchised motor vehicle dealer under any bankruptcy or receivership law. N.Y.Veh. and Traf.Law § 463(2)(d)(2)(ii) (McKinney 1986).

as a distinct and different entity than the prepetition debtor. *Compare In re Martin Custom Made Tires Corp.*, 108 F.2d 172, 173 (2d Cir.1939) (a debtor in possession is a new entity from the prepetition debtor and possesses trustee powers for the benefit of the creditors) *with NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1983) ("[I]t is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition. . . ."). In the instant case there is no question that, as a matter of fact, the post-petition debtor in possession is now a different entity than the prepetition debtor. This is so because Louis Pandolfo purchased 100% of the debtor's equity stock during the early part of this month. Accordingly, the debtor's previous shareholders, who filed a corporate Chapter 11 case on October 1, 1991, are no longer in control of the corporate debtor. This factor has significance with respect to the movants' argument that this case should be dismissed pursuant to 11 U.S.C. § 1112(b) for cause, in that the Chapter 11 petition was filed in bad faith. In determining whether or not the debtor can realistically propose an effective plan of reorganization, the court must focus on this issue in the context of the capabilities of the new management rather than the prospects available to the debtor's former shareholders.

### Issue of Bad Faith

■ The movants, Toyota and BNY, argue that the debtor's Chapter 11 petition was filed in bad faith and should be dismissed pursuant to 11 U.S.C. § 1112(b) because when the debtor filed its petition on October 1, 1991, it owned no real estate, it possessed no physical assets, and its business operations were closed down because BNY had replevied all its collateral, including automobiles, any other inventory, equipment and supplies. The debtor's employees had been let go and Toyota had served notice of the termination of the debtor's Toyota dealership agreement. In these circumstances, the movants contend that there is no realistic possibility of an effective reorganization. The availability

of new capital and the proposal for the submission of a plan of reorganization came about only this month, after Pandalfo, a successful Pontiac dealer, acquired 100% of the debtor's equity stock.

It is well-settled that a Chapter 11 case may be dismissed pursuant to 11 U.S.C. § 1112(b) if the petition was filed in bad faith. *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir.1989); *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393 (11th Cir.1988); *Little Creek Development Co. v. Commonwealth Mortgage Co. (In re Little Creek Development Co.),* 779 F.2d 1068 (5th Cir.1986); *Idaho Dept. of Lands v. Arnold (In re Arnold),* 806 F.2d 937 (9th Cir.1986); *In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); *Albany Partners, Ltd. v. W.P. Westbrook, Jr. (In re Albany Partners, Ltd.),* 749 F.2d 670 (11th Cir.1984). These cases generally involve a debtor with real estate subject to a mortgage foreclosure or a plaintiff in a pending litigation where the defendant debtor has no employees and is not engaged in any significant business activities. Generally, these cases reveal that there are substantially no unsecured creditors and the only significant creditors are those seeking foreclosure or pursuing pending litigation against the debtor. In the light of these facts it may be concluded that the Chapter 11 petition was filed in bad faith for the purpose of frustrating the creditors' attempts to foreclose upon the debtor's sole asset or to delay the pending litigation. *See, e.g., Phoenix Piccadilly,* 849 F.2d at 1394.

In the instant case, the debtor owns no physical assets and there are no creditors holding secured claims who might be frustrated or delayed because the debtor filed a Chapter 11 case. BNY, which held a secured claim against the debtor's automobiles, inventory and equipment, had replevied these assets before the Chapter 11 petition was filed. BNY is simply an unsecured creditor with respect to any deficiency claim it might have. The other movant, Toyota, claims to have terminated the debtor's Toyota dealership agreement before

the debtor filed its Chapter 11 petition. Toyota is an unsecured creditor for the money owed to it by the debtor. The debtor also has numerous other unsecured creditors who will receive nothing if the debtor's Chapter 11 petition is dismissed. If anything, the unsecured creditors will be frustrated if the debtor's Chapter 11 petition is dismissed or converted for liquidation under Chapter 7.

If Pandolfo infuses new capital into the debtor and proposes a Chapter 11 plan, which, if confirmed, will provide for some distribution to the unsecured creditors, they will receive more than the zero distribution which they face if the Chapter 11 case is dismissed or converted for liquidation under Chapter 7 of the Bankruptcy Code.

That the debtor presently has no physical assets or any ongoing business activities, or that Toyota claims to have terminated the debtor's dealership agreement before the Chapter 11 petition was filed, does not mean that the debtor has no realistic prospects for proposing a plan of reorganization. The issue as to Toyota's right to terminate the debtor's dealership franchise is not now before this court in connection with the movants' motion pursuant to 11 U.S.C. § 1112(b) for a dismissal of the Chapter 11 petition. The debtor maintains that it was open for business on September 19, 20, 21, 22 and 23, 1991 and that Toyota's notice of termination, dated September 27, 1991, is defective because it fails to specify seven consecutive days when the debtor's business was closed as required under New York Vehicle and Traffic Law § 463(2)(d)(2)(ii). Therefore, the debtor argues that it continues to exist as a Toyota dealer and that this franchise is property of the estate within the meaning of 11 U.S.C. § 541 which may be utilized by the debtor's new shareholder.

Toyota contends that under the dealership agreement with the debtor a change in ownership or management of a Toyota, dealership requires the prior written approval of Toyota. Pandolfo acquired this interest in the debtor by the purchase of its stock and not by the assignment of the Toyota franchise in accordance with 11 U.S.C. § 365(f)(1). In *In re Wills Motors, Inc.*, 133 B.R. 297 (Bankr.S.D.N.Y.1991), this court permitted the assignment of an automobile franchise to a credit-worthy automobile dealer over the objection of the automobile franchisor. Nonetheless, the efficacy of the debtor's Toyota franchise and the debtor's right to continue operating under the franchise after Pandolfo became the debtor's sole shareholder are questions which must be determined in an appropriately noticed proceeding and will not be decided in the context of a motion to dismiss the Chapter 11 case for bad faith pursuant to 11 U.S.C. § 1112(b).

The facts in this case do not satisfy the requirements for dismissing a bad faith filing. The filing of the debtor's Chapter 11 petition did not frustrate or prevent any secured creditor from realizing on its collateral, nor did it stay any pending litigation against the debtor as there was no litigation pending. The unsecured creditors will benefit if the debtor is able to propose a Chapter 11 plan that provides for some payment to them. Hence, the movants' motion to dismiss must be denied to the extent that it is bottomed on the concept of a bad faith filing.

### § 1112(b)(2)—Inability to Effectuate A Plan

■ The movants argue that the debtor is unable to effectuate a Chapter 11 plan because it has no active business and no assets. The debtor responds that it continues to exist as a Toyota franchisee and that this franchise is a valuable asset which will prompt its new sole shareholder to pour in new capital and to propose a Chapter 11 plan of reorganization within a short time. The debtor's new sole shareholder has testified that he has prepared a business plan and is in a position to file a plan of reorganization promptly. During the 120–day exclusivity period under 11 U.S.C. § 1112(b), a debtor is given the exclusive right to promulgate a Chapter 11 plan of reorganization. The 120–day period has not yet expired. It cannot be said that the debtor is unable to effectuate a Chapter 11 plan when its new management has already

promulgated a business plan which will form the basis for a proposed plan of reorganization. An infusion of new capital, as offered by the debtor's new sole shareholder, will also be a positive factor in support of the debtor's ability to effectuate a Chapter 11 plan. The movants are premature in seeking to dismiss the debtor's Chapter 11 case at this time because the debtor should at least be afforded the 120–day exclusivity period permitted under 11 U.S.C. § 1121(b) to propose a Chapter 11 plan. *See Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 106 (2d Cir.1982); *In re Hempstead Realty Associates*, 38 B.R. 287, 290 (Bankr.S.D.N.Y. 1984).

### *Relief from the Stay*

■ Toyota seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to obtain a court order confirming that the debtor's Toyota dealership agreement was terminated and that the debtor no longer holds a Toyota franchise. If Toyota did not rely on its previous notices and instead, sought to issue a new 15–day termination notice to the debtor, Toyota would be stayed by 11 U.S.C. § 362(a)(3) from attempting to obtain property from the estate and would first require relief from the automatic stay before a new termination notice could be issued to the debtor. *In re Deppe*, 110 B.R. 898, 907 (Bankr.D.Minn. 1990). However, Toyota relies on its termination notice dated September 27, 1991, which is based on the debtor's alleged failure to operate its dealership for seven consecutive days, commencing on September 19, 1991. This is a ground for termination pursuant to New York Vehicle and Traffic Law Section 463(2)(d)(2)(ii) and Section XX(B)(1)(a) of the Toyota dealership agreement. If this default occurred, it is incapable of cure or remedy because the debtor cannot undo this historical fact. *Deppe*, 110 B.R. at 904. However, the debtor disputes the seven-day period and contends that the September 27, 1991 notice is inaccurate and, therefore, defective. Additionally, Toyota contends that the debtor's dealership agreement expired by its own terms on November 19, 1991.

■ Toyota does not require relief from the automatic stay to obtain an order from this court as to the efficacy of its termination notice. A party is never stayed from litigating with a debtor in the debtor's bankruptcy forum. *In re Thomson McKinnon, Inc.*, 130 B.R. 721, 724 (Bankr. S.D.N.Y.1991); *In re Atreus Enterprises, Ltd.*, 120 B.R. 341, 346 (Bankr.S.D.N.Y. 1990). Toyota is not hampered by the automatic stay imposed under 11 U.S.C. § 362(a) and is free to commence an action against the debtor in this court seeking declaratory relief with respect to the alleged termination of the Toyota franchise. Therefore, relief from the automatic stay is unnecessary for this purpose.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (G).

2. The movants' motion pursuant to 11 U.S.C. § 1112(b) for an order dismissing the debtor's Chapter 11 case because the Chapter 11 petition was filed in bad faith is denied. The movants have not established that the debtor has no realistic prospects for proposing a Chapter 11 plan of reorganization.

3. The movants' motion pursuant to 11 U.S.C. § 1112(b)(2) for an order dismissing the debtor's Chapter 11 case because of the debtor's inability to effectuate a plan is denied as premature. The debtor's new sole shareholder proposes to infuse new capital into the debtor and to propose a Chapter 11 plan promptly.

4. Toyota's motion pursuant to 11 U.S.C. § 362(d)(1) for relief from the automatic stay in to obtain a court order confirming that the debtor's Toyota franchise was terminated is denied as unnecessary because the debtor may seek such a determination in this court, notwithstanding the scope of 11 U.S.C. § 362(a).

SETTLE ORDER on notice.