In re HUDSON TRANSFER
GROUP, INC., Debtor.

Yann Geron, as interim chapter 7
trustee of the Estate of Hudson
Transfer Group, Inc., Plaintiff,

v.

Valeray Realty Company,
Inc., Defendant.

Bankruptcy No. 99 B 46309(SMB).
Adversary No. 00-2027A.

United States Bankruptcy Court,
S.D. New York.

Feb. 17, 2000.

Geron & Corsano, New York City, Yann Geron, of counsel, for plaintiff.

Law Offices of Michael B. Wolk, P.C., New York City, Michael B. Wolk, of counsel, for defendant.

## MEMORANDUM DECISION DENYING PLAINTIFF'S MOTION TO ENJOIN THE DEFENDANT FROM EXECUTING ITS WARRANT OF EVICTION AND TO EXTEND HIS TIME TO CURE LEASE DEFAULTS

STUART M. BERNSTEIN, Chief Judge.

The Plaintiff, the chapter 7 trustee of Hudson Transfer Group, Inc. ("Hudson"), filed this motion (1) to enjoin Hudson's landlord, Valeray Realty Company, Inc. ("Valeray"), from executing its warrant of eviction issued pre-petition, and (2) to extend his time to cure certain alleged lease defaults. Valeray opposed the motion. At a hearing held on January 24, 2000, I denied the motion from the bench. This memorandum amplifies the reasons for that ruling.

## BACKGROUND

Valeray and Hudson signed a lease dated April 26, 1999, for non-residential real property in Manhattan. The lease ran for a term of approximately ten years, commencing May 1, 1999 and expiring November 30, 2008. Beginning in July 1999, Hudson stopped paying rent. As a result, Valeray instituted non-payment proceedings in state court. On October 15, 1999, Hudson and Valeray signed a stipulation, which the state court "so ordered," settling the non-payment proceeding. The stipulation authorized the issuance of a warrant of eviction (which issued on October 27, 1999); stayed its execution through November 15, 1999, and gave Hudson until then to pay rent arrears in the amount of $103,019.15. If Hudson paid by the deadline, the warrant would be vacated and the lease reinstated.

Hudson did not pay, and instead, filed a *pro se* corporate chapter 11 petition on November 15, 1999. The parties agree, but for different reasons discussed below, that an effective filing extended the stipulation cure period for sixty days, or until January 14, 2000. The case was subsequently converted to a chapter 7 on January 6, 2000, and six days later, the plaintiff brought on this motion by order to show cause, and sought a temporary restraining order tolling the running of the sixty day period. I granted the temporary restraining order to give the parties the opportunity to brief the legal issues raised by the trustee's motion.

## DISCUSSION

The pending motion presents two issues. First, does 11 U.S.C. § 365 or 11 U.S.C. § 108(b) govern the time within which the trustee may cure the defaults under the

state court stipulation and order, and thereby reinstate the lease. Second, if § 108(b) applies, can the bankruptcy court extend its sixty day tolling provision "for cause." The plaintiff contends that § 365 controls, but even if § 108(b) governs, I can and should extend the sixty day period. Initially, Valeray challenges the effectiveness of the *pro se* corporate filing. Ultimately, it argues that § 108(b) governs, and its sixty day period cannot be extended.

**A. Section 365**

Section 365 governs the assumption and rejection of executory contracts and unexpired leases. In chapter 11, the debtor has sixty days from the order for relief—here, the petition date—to assume a commercial lease; absent timely assumption or the extension of time to assume, the lease is deemed rejected. 11 U.S.C. § 365(d)(4).[1] Upon conversion of the case to chapter 7, the section 365 assumption deadlines run anew, *see* 11 U.S.C. § 348(c),[2] and the trustee has an additional sixty days from the conversion date to assume the lease. 11 U.S.C. § 365(d)(1).[3] If section 365 applies to the dispute before me, the plaintiff will have sixty days from

1. Section 365(d)(4) states:
   Notwithstanding paragraphs (1) and (2) [of this subsection], in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of non-residential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

2. Section 348(c) states that "[s]ections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, 1208, or 1307 of this title, as if the conversion order were the order for relief."

3. Section 365(d)(1) states:
   In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of

the January 6, 2000 conversion order to cure the lease defaults, and that sixty day period can be extended for cause. *See id.*

■■■ At the outset, I conclude that section 365 does not apply. Under New York law, the issuance of a warrant of eviction cancels the lease and annuls the relationship of landlord and tenant. N.Y. Real Prop.L. § 749(3) (McKinney 1979);[4] *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y.1996). Here, the warrant of eviction issued prior to the petition on October 27, 1999. Thus, by the time that the debtor filed the petition, the lease had terminated. A bankruptcy petition does not revive a terminated lease, *id.*; *In re Island Helicopters, Inc.*, 211 B.R. 453, 463 (Bankr.E.D.N.Y.1997); *Bucknell Leasing Corp. v. Darwin (In re Darwin)*, 22 B.R. 259, 262 (Bankr.E.D.N.Y.1982), and hence, there was no unexpired lease to assume. *Darwin*, 22 B.R. at 263; 11 U.S.C. § 365(c)(3).

■■ This conclusion distinguishes the instant case from *Moody v. Amoco Oil Company*, 734 F.2d 1200 (7th Cir.1984), which the plaintiff cites as authority for the applicability of § 365 to his cure rights. In *Moody*, the debtor and non-debtor were parties to certain contracts. The non-

residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

4. Section 749(3) provides:
   The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof. Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.

debtor sent a notice to cure pre-petition, but the cure period had not yet expired when the petition was filed. Accordingly, the parties' contracts were still executory as of the petition date, and the court held that section 365, rather than § 108(b), governed the time to cure any defaults. *Id.* at 1215. In contrast, the trustee has no unexpired lease to assume under § 365, and the latter provision does not govern. Further, Hudson's right on the petition date, and for sixty days thereafter, to cure the stipulation default and revive the lease is immaterial. The existence of an unexercised right of redemption does not transform a terminated lease into an unexpired one. *See In re GSVC Restaurant Corp.,* 10 B.R. 300, 302 (S.D.N.Y.1980); *Marriott Corp. v. Chuck Wagon Bar–B–Que, Inc. (In re Chuck Wagon Bar–B–Que, Inc.),* 7 B.R. 92, 93–95 (Bankr.D.D.C.1980).

**B. Section 108(b)**

█ Section 108(b), rather than § 365, controls the cure period. Section 108(b) provides:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

Since Hudson's cure period ran on November 15, 1999, the petition date, section 108(b) gave Hudson and then the plaintiff a sixty day extension, or until January 14, 2000, to cure the default under the stipulation and order. Unlike section 365, the conversion to chapter 7 does not restart the sixty day extension granted by section 108(b). Thus, unless the sixty day period can be extended for cause or for any other reason, the cure period lapsed.

█ The majority of the courts that have considered this issue have concluded that the court cannot utilize its powers under § 105(a) to extend the cure period, at least in the absence of some wrongdoing by the non-debtor party. *See, e.g., Noonan v. Secretary of Health and Human Services (In re Ludlow Hosp. Soc., Inc.),* 124 F.3d 22, 28 (1st Cir.1997); *In re Glenn,* 760 F.2d 1428, 1440–41 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Johnson v. First Nat'l Bank,* 719 F.2d 270, 274 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Farmer,* 81 B.R. 857, 861–62 (Bankr.E.D.Pa.1988); *see also First National Fidelity Corp. v. Perry,* 945 F.2d 61, 65 (3d Cir.1991) (bankruptcy court lacked power to extend debtor's remaining time period under state law to exercise its statutory right of redemption after foreclosure beyond the 60 day extension period set forth in § 108(b)). This view is premised upon the principle that although a bankruptcy court's equitable powers under § 105 are broad, they cannot be exercised in a manner inconsistent with other provisions of the Bankruptcy Code. *See Ludlow,* 124 F.3d at 27–28; *Johnson,* 719 F.2d at 272; *see also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can be exercised within the confines of the Bankruptcy Code; under this section [105(a)], a court may exercise its equitable power only as a means to fulfill some specific Code provision"); *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 985 (2d Cir.1990) (§ 105(a)'s equitable powers cannot be exercised in derogation of other sections of the Bankruptcy Code). Section 108(b) specifically addresses the duration of any

extension of the debtor's right to cure a default under applicable non-bankruptcy law. Section 105(a) cannot, therefore, be used to frustrate Congress' unambiguous intent to establish an extension of no more than sixty days. *Ludlow,* 124 F.3d at 28; *Johnson,* 719 F.2d at 275.

A comparison with other provisions of the Bankruptcy Code reinforces this interpretation of § 108(b). No one provision of the Bankruptcy Code can be viewed in isolation from the others; each provision must be construed in the context of the entire statute. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Where Congress expressly includes an element in one provision of a statute, and fails to include it in another, it manifests an intent to confine the element to the specified instance. *See Field v. Mans,* 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) ("'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'") (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Section 108(b) is silent regarding the ability to extend the sixty day period, yet other provisions of the Code expressly provide for similar extensions for cause shown. *See, e.g.,* §§ 365(d)(1), 365(d)(4), 1121(d).[5] Thus, Congress knew how to provide for the power to extend a statutory period for cause, and section 108(b)'s silence on this score indicates Congress's intent to withhold such authority. The trustee has not pointed to any wrongdoing by Valeray, and this Court cannot, therefore, exercise its general equitable powers to countermand the specific provisions of § 108(b). *See*

*Norwest Bank,* 485 U.S. at 206, 108 S.Ct. 963; *Ludlow,* 124 F.3d at 28; *Ionosphere,* 922 F.2d at 995.

Finally, *In re G–N Partners,* 48 B.R. 462 (Bankr.D.Minn.1985), on which the trustee relies for his contrary argument, is not persuasive. There, the bankruptcy court held that it had the power to extend the debtor's time to exercise an option beyond the sixty day period specified in § 108(b). It did so based upon its conclusion that the Eighth Circuit did not actually rule otherwise in *Johnson,* and that it was free to grant such a remedy in the absence of express language in the statute prohibiting an extension. 48 B.R. at 467–68. For the reasons discussed above, I have reached the contrary conclusion.

Accordingly, the trustee's cure period lapsed on January 14, 2000, could not be extended, and the plaintiff's motion must, therefore, be denied. In light of this conclusion, I need not consider Valeray's contention that Hudson's *pro se* corporate filing was ineffective.

---

5. Section 1121(d) provides:

    On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period [during which the debtor may file and solicit acceptances for a plan of reorganization].