## In re NEW BREED REALTY ENTERPRISES, INC., Debtor.

No. 01–18864–608.

United States Bankruptcy Court, E.D. New York.

March 7, 2002.

---

Stein Riso Mantel, LLP, New York City, for Debtor.

Backenroth, Frankel & Krinsky, LLP, New York City, for Creditor Candace Van Alen.

## DECISION AND ORDER

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of Candace Van Alen ("movant" or "Van Alen") for an order vacating the automatic stay pursuant to 11 U.S.C. § 362(d) to permit the movant to collect a $300,000 deposit from escrow, as partial damages arising from the failure of New Breed Realty Enterprises, Inc. ("debtor") to close a sale under an agreement with the movant to purchase certain property, and to permit the movant to sell the property to another party. Van Alen's motion is granted for the reasons set forth herein.

### Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2)(G) and the Eastern District of New York standing order of reference dated August 28, 1986. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr.P. 7052.

### Facts

The relevant facts are not in dispute. The movant owns 100 shares of the common stock of Greenvale Corporation ("Property"). (Agreement between Candace Van Alen and New Breed Realty Enterprises Inc. dated May 1, 2000 ("Agreement") at 1). The Property represents all of the issued and outstanding shares of stock of Greenvale Corporation, a corporation that is the sole owner of a parcel of residential real property located in the Village of Old Brookville, New York. On May 1, 2000, the movant and the debtor entered into the Agreement in which the debtor agreed to purchase the Property for $6,000,000. The Agreement re-

quired the debtor to deliver a $300,000 deposit to the movant, to be held in escrow, upon the execution of the Agreement, and to deliver the balance of $5,700,000 at closing. (Agreement ¶ 2.) The debtor made the $300,000 deposit, which is presently held by the movant's attorneys in the real estate transaction, Kamerman & Soniker, P.C. ("Escrowee") in escrow. The parties entered into a written Modification Agreement ("Mod. Agreement") which was signed on behalf of the debtor on April 18, 2001, and on behalf of Van Alen on May 3, 2001, whereby the parties extended the closing date of the sale to "August 1, 2001, TIME BEING OF THE ESSENCE" (Mod. Agreement ¶ 4), provided that the movant is entitled to the entire deposit held in escrow as liquidated damages should the debtor fail to close the sale on or before August 1, 2001 (Mod. Agreement ¶ 6), and struck all notices required to be given by either party under the Agreement as a condition of closing (Mod. Agreement ¶ 1).

The Modification Agreement also required the debtor to deliver an additional $300,000 deposit toward the purchase price on or before June 30, 2001 to the Escrowee. (Mod. Agreement ¶ 2.) On June 29, 2001 ("Petition Date"), the date before the additional deposit was due, the debtor filed the instant voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor has not tendered the additional $300,000 deposit or closed the sale under the Agreement since the Petition Date. (Doc. 10 ¶ 5.)

*Law*

■ Van Alen argues that the automatic stay should be vacated pursuant to 11 U.S.C. § 362(d)(1) for cause, because the debtor's time to close the sale under the Agreement has expired by operation of law. As a result, according to Van Alen, the debtor no longer has any interest in the Property or in the $300,000 deposit held in escrow. Van Alen further argues that there are also grounds to vacate the automatic stay pursuant to § 362(d)(2). Specifically, Van Alen argues that the debtor lacks equity in the $300,000 deposit held in escrow because the debtor is contractually obligated to transfer the deposit to Van Alen if the debtor fails to close the sale on or before the time of the essence closing date. (Doc. 6 ¶ 16.) In addition, according to Van Alen, the debtor lacks equity in the Property because neither 11 U.S.C. § 108(b) nor 11 U.S.C. § 365 gives the debtor a right to cure the default that arose from the debtor's failure to close by the time of the essence closing date. Consequently, according to Van Alen, neither the $300,000 deposit nor the Property can be a part of any reorganization, and the lifting of the automatic stay is warranted. (Doc. 6 ¶ 16.)

The debtor takes the position that its time to close the sale has not yet expired by operation of law, and that it retains a right to close the sale and to assume the Agreement. The debtor argues that it is irrelevant that the statutory 60–day statutory grace period under § 108(b) has already expired, because the court has the authority to extend the debtor's cure period beyond the statutory 60 days under § 108(b) or § 365. (Doc. 8 ¶ 12.) Furthermore, notwithstanding the time of the essence clause in the Agreement, the debtor argues that § 365(d)(2) allows a debtor-in-possession to assume an executory contract any time before the confirmation of a plan. (Doc. 8 ¶ 11.) Therefore, the debtor argues, it retains an interest in the Property as well as the $300,000 deposit held in escrow, and the movant's motion should be denied.

To resolve this motion, this Court must determine whether § 108(b) or § 365 au-

thorizes the debtor to cure its defaults under an executory contract for the purchase of shares in a corporation where the closing date of the sale has already expired (including any statutory grace period provided by § 108(b)) and where the contract specified that time was of the essence.

*Extension of the Contractual Deadlines Under § 108(b)*

Section 108(b) generally governs post-petition extensions of time to cure defaults. *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1215 (7th Cir.1984). Section 108(b) in relevant part provides:

> (b) [I]f ... an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

· In this case, the debtor's time to tender the additional $300,000 deposit and to close the sale under the Agreement had not expired on the Petition Date. If § 108(b) is applicable, the debtor's time to tender the deposit and close the sale was extended to August 29, 2001 (60 days from the Petition Date). In any event, the debtor failed to cure its defaults within the 60–day period provided under § 108(b). Therefore, § 108(b) provides no assistance to the debtor unless the court grants an extension of time beyond the statutory 60–day period. To the extent that this Court has any authority to extend the cure period under § 108(b), the debtor has not shown that an extension should be granted.

"The majority of the courts that have considered this issue have concluded that the court cannot utilize its powers under § 105(a) to extend the cure period, at least in the absence of some wrongdoing by the non-debtor party .... Section 108(b) specifically addresses the duration of any extension of the debtor's right to cure a default under applicable non-bankruptcy law. Section 105(a) cannot, therefore, be used to frustrate Congress's unambiguous intent to establish an extension of no more than sixty days." *Geron v. Valeray Realty Co., Inc. (In re Hudson Transfer Group, Inc.),* 245 B.R. 456, 459–60 (Bankr. S.D.N.Y.2000) (collecting cases). *Hudson* noted that certain other provisions of the Bankruptcy Code, *i.e.,* § 365(d)(1), § 365(d)(4) and § 1121(d), all provide for similar extensions of time for cause shown. *Hudson Transfer,* 245 B.R. at 460. Consequently, § 108(b)'s silence in this regard indicates Congress's intent to withhold the courts' authority to grant extensions of time. *Hudson Transfer,* 245 B.R. at 460.

The debtor cites *In re G–N Partners,* 48 B.R. 462 (Bankr.D.Minn.1985) for the proposition that the court has the authority to extend the cure period under § 108(b) beyond 60 days. *G–N Partners* found that the court has the power to extend the statutory 60–day period under § 108(b) because § 108(b) did not expressly prohibit the court from extending the cure period. *Id.* at 468. *G–N Partners* also found "that time periods [in § 108] may be extended as long as they are done before the expiration of the statutory period and as long as the power to extend is carefully exercised." *Id.* at 468. The court in *G–N Partners* further noted that the power to extend the statutory redemption period should be exercised only under very limited circumstances, such as "fraud, mistake, accident or erroneous conduct." *Id.* at 467–68 (*quoting Johnson v. First*

*National Bank of Montevideo,* 719 F.2d 270, 274 (8th Cir.1983)). This is not inconsistent with *Hudson,* which found no authority to extend the cure period absent some wrongdoing by the non-debtor party. *Hudson,* 245 B.R. at 459. Even if the interpretation of § 108(b) by the court in *G–N Partners* is accepted, however, the case is inapposite because the debtor failed to seek an extension of time prior to the expiration of the statutory period (or, indeed, at any time thereafter).

Accordingly, § 108(b) does not assist the debtor because the debtor has not made a timely motion for the extension of the statutory 60–day grace period; nor has the debtor alleged that Van Alen engaged in any wrongdoing or that any other circumstances exist that would justify such an extension of time.

*Assumption of the Agreement Under § 365*

■ This, however, does not end the inquiry. It is possible that, even though the debtor did not cure the defaults under the Agreement within the 60–day period provided under § 108(b), the debtor may seek to assume the Agreement in accordance with the provisions of § 365 of the Bankruptcy Code, which governs the assumption and rejection of executory contracts. *Eastern Air Lines, Inc. v. Insurance Co. of State of Pennsylvania (In re Ionosphere Clubs, Inc.),* 85 F.3d 992, 998–99 (2d Cir.1996). Section 365(d)(2) provides in relevant part:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

■ The parties do not dispute that the Agreement, as of the Petition Date, was an executory contract. This is clear because, as of the Petition Date, performance on both sides remained outstanding (*i.e.,* payment of the remaining purchase price by the debtor, and delivery of the 100% shareholder interest in Greenvale Corporation by Van Alen), and a default in performance by either party would be a material default. *See In re Teligent, Inc.,* 268 B.R. 723, 729–30 (Bankr.S.D.N.Y.2001) (reviewing the various tests that courts have applied to determine whether a contract is executory). Section 365(d)(2) permits a debtor, with the approval of the bankruptcy court, to assume an executory contract of personal property any time before the confirmation of a plan. *Ionosphere,* 85 F.3d at 998–99. If there has been a default in the contract, § 365(b) requires that all defaults be cured as a prerequisite to assuming the executory contract. *Ionosphere Clubs,* 85 F.3d at 999; *see also In re Carterhouse, Inc.,* 94 B.R. 271, 273 (Bankr.D.Conn.1988) (finding that § 365(b)(1) extends to non-monetary as well as monetary breaches).[1]

---

1. Section 365(b) in relevant part provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

The debtor's failure to close the sale on or before the time of the essence closing date, including any extension of that date provided by § 108(b)'s statutory grace period, constitutes a non-monetary default which cannot be cured because it is a historical fact. *See In re Claremont Acquisition Corp., Inc.,* 113 F.3d at 1029, 1033 (9th Cir.1997); *In re Toyota of Yonkers, Inc.,* 135 B.R. 471, 477 (Bankr. S.D.N.Y.1992) (debtor's failure to operate its car dealership for seven consecutive days was a default that was incapable of cure or remedy because it was grounds for termination of the franchise agreement under applicable state law and the debtor could not undo this historical fact); *In re Lee West Enterprises, Inc.,* 179 B.R. 204, 206 (Bankr.C.D.Cal.1995) (finding that the historical fact of debtor's closure of the automobile dealership constitutes a material default which was incapable of cure); *In re Mack,* No. 93–13116F, 1993 WL 722255 at *1, *4 (Bankr.E.D.Pa. Nov. 10, 1993) (finding that prior illegal drug activity at the debtor's leasehold constituted a non-monetary breach of the parties' lease agreement, which was a historical fact incapable of being cured); *In re Deppe,* 110 B.R. 898, 904 (Bankr.D.Minn.1990) (finding that the debtor's failure to maintain operations at a gas station was a material default incapable of cure or remedy because the estate cannot overcome the historical fact that a lapse of 19 days in operations took place). Therefore, the relevant inquiry is whether the debtor is barred from assuming the Agreement by § 365(b)(1) where the debtor is in default of a non-monetary obligation (here, an obligation to close by August 1, 2001) that by definition is incapable of cure.

(C) provides adequate assurance of future performance under such contract or

Some courts that have addressed this issue have begun their analysis by scrutinizing § 365(b)(2), which sets forth a list of monetary and non-monetary breaches that a debtor need *not* cure before assuming a contract. 11 U.S.C. § 365(b)(2)(A)–(D); *see Claremont,* 113 F.3d at 1033. Relevant to the issue of non-monetary default is § 365(b)(2)(D), which provides that:

(b)(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

\*     \*     \*     \*     \*     \*

(D) the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease.

In *In re GP Express Airlines, Inc.,* 200 B.R. 222, 233 (Bankr.D.Neb.1996), the debtor airline was in default of several non-monetary obligations by failing to meet performance standards relating to the completion of flights, the timely arrival of flights, and the utilization of Airline Clearing House accounting services. These defaults were incurable because they were "historical facts." The court held that the debtor airline was not required to cure non-monetary defaults under the contract as a prerequisite to assumption of the contract, because it construed § 365(b)(2)(D) as addressing two separate issues-that is, providing that (1) a debtor is not required to cure or satisfy any penalty rate and (2) that the debtor is not required to cure any defaults in non-monetary obligations. *GP Express,* 200 B.R. at 234. A search of the relevant case

lease.

law reveals that *GP Express* is the only reported case holding that § 365(b)(2)(D) completely relieves a debtor from any obligation to cure non-monetary defaults in executory contracts or unexpired leases.

Other courts that have addressed this issue, including *In re Claremont Acquisition Corp., Inc.*, 113 F.3d 1029, 1033 (9th Cir.1997), cited by *GP Express* in support of its holding, have construed § 365(b)(2)(D) to mean that a debtor is relieved from its obligation to cure any penalties arising from a non-monetary default, but that the debtor is not automatically relieved from its obligation to cure a non-monetary default. *Claremont*, 113 F.3d at 1033–34; *In re Vitanza*, 1998 WL 808629 at *21, fn. 44 (Bankr.E.D.Pa. Nov. 13, 1998) (same). *Claremont* found that it is "both grammatically incorrect and non-sensical" to construe § 365(b)(2)(D) as addressing two separate issues, and that the limited legislative history of § 365(b)(2)(D) suggests that Congress only intended to relieve debtors of the obligation to pay penalties. *Claremont*, 113 F.3d at 1034. This Court agrees with the analysis in *Claremont*, and does not construe § 365(b)(2)(D) as relieving a debtor from the obligation to cure non-monetary defaults as a prerequisite to the assumption of a contract or lease.

■ However, the analysis does not end here. Where the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default caused "substantial economic detriment." *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir.1990); *Vitanza*, 1998 WL 808629 at *25 (finding that although the debtor's use of the sidewalk for the purposes of a café constituted an incurable non-monetary breach, the default was not material). For example, in *Vanderpark*

*Prop., Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1473 (9th Cir.1988), the plaintiff argued that the debtor did not have the right to assume the lease of commercial real property because the debtor failed to comply with § 365(b)(1), in that the debtor failed to cure certain non-monetary defaults, including the failure to make repairs, the abandonment of the lease, and an improper attempt to assign the lease. *Id.* The Ninth Circuit, affirming the findings of fact by the bankruptcy court below, found that the non-monetary defaults were not of sufficient substance to preclude the trustee's assumption of the lease. *Id.*

In *Joshua Slocum*, the Third Circuit articulated a standard which may be applied to determine whether the existence of an incurable non-monetary default precludes assumption of an executory contract or unexpired lease. There, the court noted with approval the concept that "the [bankruptcy] court does retain some discretion in determining that lease provisions ... may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets." *Joshua Slocum*, 922 F.2d at 1092 (*citing In re Mr. Grocer, Inc.*, 77 B.R. 349, 354 (Bankr.D.N.H.1987)). The Third Circuit found in *Joshua Slocum* that a provision in a shopping center lease, allowing for the termination of the lease if certain minimum sales figure were not realized, was "material in the sense that it goes to the very essence of the contract, i.e., the bargained for exchange," and that it was "also reflective of the economic terms of the lease agreement governing occupancy." *Joshua Slocum*, 922 F.2d at 1092; *see also In re Whitsett*, 163 B.R. 752, 754 (Bankr. E.D.Pa.1994) (in determining whether

debtor's non-monetary default may be deemed waived or whether it precludes assumption of the lease, "[t]he determining factor appears to be the 'materiality' of the default in issue").

*Materiality and Economic Significance*

■ Under New York law, "a party's failure to perform by the closing date specified in the contract does not constitute a material breach unless the other party has effectively declared time to be of the essence." *Chung–Li Chou v. Main Street Assoc.*, 208 A.D.2d 670, 671, 617 N.Y.S.2d 373 (2d Dep't 1994). "When there is a declaration that time is of the essence, however, each party must tender performance on law day unless time for performance is extended by mutual agreement .... Once the closing was aborted, moreover, it was not necessary for plaintiff to entertain further proposals from defendant for if defendant had failed to satisfy a material element of the contract, he was already in default." *Grace v. Nappa*, 46 N.Y.2d 560, 565, 415 N.Y.S.2d 793, 389 N.E.2d 107 (1979); *see also* 6 Walter H.E. Jaeger, *Williston on Contracts*, § 846 at 181 (3d ed.1962) ("When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party"). The time of the essence notice must be clear, distinct and unequivocal, and must fix a reasonable time within which to perform and it must inform the other party that if he does not perform by that date, he will be considered in default. *Whitney v. Perry*, 208 A.D.2d 1025, 1026, 617 N.Y.S.2d 395 (3d Dep't 1994); *Mohen v. Mooney*, 162 A.D.2d 664, 665, 557 N.Y.S.2d 108 (2d Dep't 1990).

■ Cases interpreting New York law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract. *E.g.*, *Grace*, 46 N.Y.2d at 566–67, 415 N.Y.S.2d 793, 389 N.E.2d 107; *EC, L.L.C. v. Eaglecrest Manufactured Home Park, Inc.*, 275 A.D.2d 898, 899, 715 N.Y.S.2d 170 (4th Dep't 2000) (in an action for specific performance of a contract to sell real property, granting summary judgment to the defendant, where plaintiff failed to perform by time of the essence closing date; failure to close by deadline constituted material breach by plaintiff); *Dub v. 47 East 74th Street Corp.*, 204 A.D.2d 145, 611 N.Y.S.2d 198 (1st Dep't 1994) (in an action to recover contract deposit, granting summary judgment to the purchaser where the seller failed to tender performance on the time of the essence date); *Mohen*, 162 A.D.2d 664, 557 N.Y.S.2d 108 (in an action for specific performance by the purchaser, granting summary judgment to seller, where purchaser failed to close by time of the essence date); *Palmiotto v. Mark*, 145 A.D.2d 549, 536 N.Y.S.2d 101 (2d Dep't 1988) (same); *Woodwork Display Corp. v. Plagakis*, 137 A.D.2d 809, 812, 525 N.Y.S.2d 273 (2d Dep't 1988) (same); *Zahl v. Greenfield*, 162 A.D.2d 449, 450, 556 N.Y.S.2d 393 (2d Dep't 1990) (in an action to recover down payment made on contract for sale of real property, granting summary judgment to seller because the purchaser failed to close on the time of the essence date); *Greto v. Barker 33 Assoc.*, 161 A.D.2d 109, 110, 554 N.Y.S.2d 546 (1st Dep't 1990) (in an action for specific performance of purchase agreement, granting summary judgment to sellers where the purchaser's failure to perform on the specified date constituted a default because the parties had made time of the essence); *Perillo v. De Martini*, 54 A.D.2d 691, 692, 387 N.Y.S.2d 280 (2d Dep't 1976) (in an

action for breach of contract to sell real property, granting summary judgment to the purchaser where the seller failed to render performance on the time of the essence date). *Cf. In re Southold Dev. Corp.*, 134 B.R. 705, 708–710 (E.D.N.Y. 1991) (finding that contract terminated when the parties failed to close on a time of the essence closing date); *Rhodes v. Astro–Pac, Inc.*, 51 A.D.2d 656, 378 N.Y.S.2d 195 (4th Dep't 1976) (where parties failed to close by time of the essence closing date, "the contract was at an end").

There is no dispute that the parties made time of the essence. The Modified Agreement expressly provided that "the Closing Date under the Contract is hereby fixed to be August 1, 2001, TIME BEING OF THE ESSENCE," and that "[s]hould [the debtor] fail to close on or before August 1, 2001 Closing Date set forth above, other then [sic] as a result of any willful failure in the part of [Van Alen], such failure to close shall constitute a willful default under this Contract." (Mod. Agreement ¶¶ 5–6.) Although the Agreement does not provide that failure to close results in termination of the contract, it is clear under applicable New York law that such failure constitutes a material default that prevents the debtor from enforcing the Agreement.

█ In reply papers, the debtor asserted for the first time that "it is Van Alen who is in default and that Van Alen was not ready to consummate the Agreement on August 1, 2001," because Van Alen allegedly failed to obtain governmental agency approval of a final subdivision map for 10 building lots on the Greenvale Property by April 1, 2001, which the debtor asserts that Van Alen was required to do pursuant to ¶ 4 of the Agreement. (Doc. 31 at 5.) Thus, the debtor argues, Van Alen is precluded as a matter of law from invoking the time of the essence clause, because Van Alen was not ready to close by the contractual deadline.

█ In support of this eleventh-hour allegation, the debtor submits an affidavit by the President of Carriage Hills Associates, Inc., an entity to which the debtor seeks to sell the Greenvale Property (after consummating the purchase from Van Alen), in which that individual states that "his office" has "been informed by the Village of Old Brookville that, as of February 28, 2002, final map approval for the Van Alen property had not been obtained." This statement is, of course, hearsay (indeed, hearsay within hearsay, in that the affiant is repeating what an unidentified person or persons in his office has been told by a representative of the Village of Old Brookville), and does not fall within any applicable exception to the hearsay rule (*cf.* Fed.R.Evid. 803(10)). Moreover, even if this belated assertion is accepted as true for the purposes of this motion, the terms of the Agreement, as modified by the Modification Agreement, do not support the claim that a failure by Van Alen to obtain approval of a final subdivision map relieved the debtor of the obligation to close by the time of the essence deadline.

Paragraph 4 of the Agreement provides that "[t]his Contract of Sale is subject to and contingent upon Seller's obtaining approval from the governmental agency of a final subdivision map for 10 building lots on the Premises, on or before April 1, 2001." However, the Agreement does not require the seller to obtain the approval; rather, failure by the seller to obtain such approval gives the debtor the right, within 10 days of receipt of written notice by seller of such failure, to (i) cancel the contract, (ii) proceed with closing within 30 days, with no reduction in the purchase price, or (iii) extend the seller's time to obtain the requisite approval to May 1,

2001. If the seller fails to obtain the requisite approval by May 1, 2001, the debtor then has 10 days after receipt of written notice of such failure to cancel the contract or proceed to close within 30 days, with no reduction in purchase price. The Agreement further provides that the seller is entitled to one adjournment of the Closing Date, not to exceed 30 days, "TIME BEING OF THE ESSENCE."

In the Modification Agreement, the parties provide that "no further notices under Section 4 of the Contract will be necessary to or from either seller or purchaser." The Modification Agreement also fixes August 1, 2001 as the time of the essence closing date, and provides for no further adjournments. Thus, neither under the Agreement nor under the Modification Agreement, does the debtor have any right to any further adjournment of the closing date, whether or not the subdivision approval was obtained. At most, the debtor had the choice of cancelling the Agreement, or going forward on the specified closing date, with no reduction in purchase price. Since the debtor neither cancelled the Agreement nor closed on the requisite date, the debtor is in default. Because time had clearly been made of the essence under the Modification Agreement, under the authorities cited above, the debtor's failure to close by the contractual date constitutes a material default that precludes the debtor from enforcing the Agreement.

The other factor looked to by the court in *Joshua Slocum* is whether the default has "economic significance." It seems clear from the record before this Court that the debtor's failure to close by the time of the essence closing date is a default that was both material and economically significant. Indeed, the parties stipulated in the Agreement that in the event that the debtor failed to close by the

contractual deadline, Van Alen would be entitled to $600,000 plus interest, "as liquidated damages and not as a penalty." (Mod. Agreement, ¶ 6.) Although the debtor contends that it should not be required to pay liquidated damages if the Agreement is assumed, the debtor does concede that Van Alen has suffered economic harm as a result of the debtor's default, and proposes under its plan of reorganization to pay $350,000 to Van Alen as compensation for such harm upon the assumption of the Agreement. (Plan of Reorganization, Article X at 12, docketed at Doc. 22.)

Even if the debtor compensates Van Alen for the economic harm that resulted from the failure to close by the time of the essence date, however, the materiality of this provision precludes this Court from treating it as "deemed waived and [the debtor's] compliance deemed insignificant in the assumption process." *In re Whitsett,* 163 B.R. at 754. Rather than being comparable to the defaults found to be immaterial in *Vitanza* (use of the sidewalk as a seating area in violation of a use restriction in the lease), the debtor's default in this case is more closely analogous to the default at issue in *In re Lee West Enterprises,* 179 B.R. 204 (Bankr.C.D.Cal. 1995). There, the debtor, a franchisee, was in default of clauses in franchise agreements that provided for termination of the agreements if the debtor failed to maintain operations for six consecutive days, as well as of provisions of the California Vehicle Code, which stated that closure for seven consecutive business days may be grounds for termination of such a franchise agreement. The trustee sought to assume and assign the franchise agreements, arguing that the "closure default" could be cured by reopening and compensating the franchisor for any economic harm suffered by reason of the closure. The court found the trustee's position to

be "untenable" in view of provisions of the franchise agreements and the California Vehicle Code, "which clearly reflect the materiality of a dealership's failure to maintain operations." *Id.* at 206. Here, similarly, the Agreement is unequivocal in declaring time to be of the essence, and New York law (in this instance, case law rather than statutory law) clearly provides that a failure to abide by a time of the essence closing deadline in a sales contract is a material breach of the contract.

As a result, the debtor is not relieved from its obligation to cure the non-monetary default arising from its failure to close by the time of the essence closing date. If the debtor was permitted to assume the Agreement under § 365, the debtor would be circumventing the effect of a material provision which goes to "the fundamental right to remain in or end a contractual relationship." *Joshua Slocum,* 922 F.2d at 1092. It follows that the debtor does not have a right to assume the Agreement under § 365(d)(2) because it cannot cure all defaults as required by § 365(b)(1).

*Modification of the Automatic Stay*

Section 11 U.S.C. § 362(d) provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of the section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

For all of the reasons stated above, the debtor is in material default under the Agreement, which cannot be cured, and cannot assume the Agreement. Therefore, the debtor does not have an equity in the Property or in the $300,000 deposit held in escrow, and they are not necessary to an effective reorganization. Accordingly, there is cause to lift the automatic stay pursuant to § 362(d)(1) and § 362(d)(2), and Van Alen's motion is granted.

IT IS SO ORDERED.