In the Matter of NEWARK AIRPORT/HOTEL LIMITED PARTNERSHIP, Debtor.

Bankruptcy No. 92–25498.

United States Bankruptcy Court,
D. New Jersey.

Jan. 28, 1993.

Shapiro & Shapiro, Hackensack, NJ by Robert P. Shapiro and John P. Di Iorio, for debtor.

Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ by Paul R. DeFilippo and Stephen A. Santola, for FGH Realty Credit Corp.

Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ by Louise Johnson, for ITT Sheraton Corp.

### OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

FGH Realty Credit Corporation, a secured creditor of the debtor, Newark Airport/Hotel Limited Partnership, brought two motions, one seeking to dismiss the debtor's petition pursuant to § 1112(b) and one seeking relief from the automatic stay pursuant to § 362(d). Subsequent to the above motions being brought, the debtor filed a motion, pursuant to § 1121(d), seeking an extension of the debtor's exclusivity period in which to file a plan.

The three motions were administratively consolidated by this court and heard together in four days of trial on December 3, 4, 10 and 16, 1992. The issues raised by these contested matters are core proceedings as defined by Congress in 28 U.S.C. § 157 *et seq.* Based upon the witnesses testifying at trial, as well as the exhibits marked into evidence and the briefs submitted by the parties, the court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. The debtor, Newark Airport/Hotel Limited Partnership (the "debtor"), filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on July 7, 1992.

2. The debtor owns and operates a hotel and restaurant business under an ITT Sheraton franchise known as the Newark Sheraton Hotel (the "Hotel") located in Elizabeth, New Jersey, on the edge of Newark Airport. [Joint Stipulation of Facts, ¶ 1 ("Stip. ¶ ___")]. The debtor is currently operating as a debtor-in-possession ("DIP").

3. The debtor acquired the Hotel in June, 1989 with the help of a loan from the

movant-secured creditor, FGH Realty Credit Corp. ("FGH"). In exchange for the loan, the debtor executed a Note (Exhibit C–1) on or about June 28, 1989 in the amount of $15,250,000.00 and a first priority mortgage and security agreement (Exhibit C–2) to FGH which encumbered all of the debtor's assets.[1] Stip. ¶¶ 2 & 3.

4. FGH is a valid secured creditor of the Hotel, and, except for any real estate taxes which have accrued on the Hotel, there are no superior or junior liens which attach to the Hotel. Stip. ¶¶ 4 & 5; (Exhibit C–3(a) & (b)).

5. The terms of the loan from FGH required interest payments to be made by the debtor on the first day of each month, with the entire outstanding balance and the final interest payment to be made on the maturity date of June 27, 1994.

6. Beginning June, 1990, the debtor failed to make the required monthly interest payments to FGH pursuant to the terms of the loan. Stip. ¶ 7.

7. Thereafter, on February 20, 1991, FGH commenced foreclosure proceedings against the Hotel in Union County Superior Court. The debtor subsequently filed an answer and counterclaim in the state court foreclosure. Stip. ¶ 7.

8. Final judgment of foreclosure was entered against the debtor by order of the state court on February 18, 1992. (Exhibit C–9) The state court judgment fixed the amount due under FGH's loan as of January 31, 1992, in the amount of $19,440,-352.21 together with lawful interest thereafter.[2] (Exhibit C–9) Subsequent to the final judgment, the Hotel was scheduled to be sold by the Union County Sheriff's Office on May 13, 1992. Stip. ¶¶ 8 & 9.

9. The debtor filed an appeal of the state court's final judgment of foreclosure on March 30, 1992. The appeal has been fully briefed and the parties are awaiting the scheduling of oral argument. Stip. ¶ 10.

10. With the appeal pending, the debtor applied to the Appellate Division for a stay of the foreclosure action. The Appellate Division denied the debtor's request for a stay pending appeal on June 25, 1992. Stip. ¶¶ 10 & 11. Since that time, the scheduled sheriff's sale was adjourned twice to June 10, 1992 and finally July 8, 1992. Stip. ¶ 9.

11. The most recently scheduled sheriff's sale of July 8, 1992 was postponed by virtue of the debtor's chapter 11 filing on July 7, 1992. Stip. ¶ 12.

12. According to the appraisal prepared by Appraisal Group International at the request of FGH Realty, the fair market value of the Hotel, as of September 1991, was stated to be $10.6 million. Stip. ¶ 6 (Exhibit C–4). Schedules filed by the debtor show FGH's claim as of the petition date to be $18,727,000.04 and unpaid real estate taxes of $953,839.09, representing approximately two years of unpaid taxes.[3] Stip. ¶ 13.

13. On October 2, 1992, FGH filed two motions with the bankruptcy court: 1) Notice of Motion in support of an order dismissing the chapter 11 petition of the debtor pursuant to 11 U.S.C. § 1112(b); and 2) Notice of Motion in support of an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d). The debtor filed a memorandum brief in opposition to both motions on October 30, 1992.

14. Meanwhile, the debtor filed a Notice of Motion, pursuant to 11 U.S.C. § 1121(d), for an order granting the debtor an extension of the exclusivity period to file a plan of reorganization.

15. During the trial, the debtor presented its evidence first, calling four (4) witnesses: 1) Joel Rosenfeld, a certified public accountant; 2) Allen Knoph, the comptroller for the Hotel; 3) Brian Acucena, an

---

1. The court notes the pending dispute as to whether FGH's lien extends to the revenues of the Hotel. Stip. ¶ 5.

2. This amount is stipulated to only for the purposes of the within hearing. Stip. ¶ 8.

3. While the value of the Hotel is disputed, the debtor concedes that it has no equity in the Hotel and thus, FGH is undersecured.

expert witness; and 4) Sheldon Blittner, a principal of the debtor.

16. FGH then presented its evidence, calling three (3) witnesses: 1) Ralph Steinhardt, a consultant/expert in the hospitality industry; 2) Mary Fitzpatrick, an operations consultant with Arthur Andersen specializing in the hotel industry; and 3) Brian Moore, a partner and certified public accountant with Arthur Andersen.

17. The four days of testimony resulted in agreement with respect to several key areas of the Hotel enterprise. First, all witnesses agreed that between 1988 and 1990 there was an 80–85% increase in the number of hotel rooms (through new construction) at Newark Airport. Second, all concurred that over the last three (3) years room rates have decreased. Third, all witnesses agreed that in the current market it is very difficult to obtain hotel financing or raise equity capital for hotel enterprises from investors.

18. Fitzpatrick, testifying for FGH, agreed with the debtor's witnesses that the projections for the Hotel support the conclusion that the average daily room rate will increase. Fitzpatrick forecasts a $1.00 increase per room, while the debtor projects a higher rise.

19. Fitzpatrick further conceded that occupancy at the Hotel has increased during the past year.

20. Perhaps most significant, Knoph, Acucena, Steinhardt and Fitzpatrick all agreed that the Newark Airport hotel market has bottomed out and should slowly improve.

## DISCUSSION

The court shall first consider FGH's motion for an order dismissing the debtor's petition since an affirmative response in that regard will eliminate the need for further discussion of the remaining issues.

**4.** As noted above, the sheriff's sale was scheduled for July 8, 1992 and the debtor filed its petition on July 7, 1992 at 12:58 pm.

**5.** Section 1112(b) states in part:
  (b) Except as provided in subsection (c) of this section, on request of a party in interest

## Dismissal of a Chapter 11 Petition Pursuant to § 1112(b)

FGH seeks the dismissal of the debtor's chapter 11 petition pursuant to § 1112(b), on the grounds that the debtor's chapter 11 proceeding was filed in bad faith on the eve of the scheduled sheriff's foreclosure sale of the Hotel.[4]

Section 1112(b) of the bankruptcy code authorizes the court to dismiss or convert a chapter 11 petition, whichever is in the best interests of creditors and the estate, for "cause."[5] *In re Gilbert Broadcasting Corp.*, 54 B.R. 2, 4 (Bankr.D.N.J. 1984). Though lack of "good faith" is not included in the list of "causes" enumerated in § 1112(b), that list is not exhaustive and it is generally agreed that lack of "good faith" is sufficient "cause" for dismissal or conversion. *Id.*

In general terms, a petition is not filed in "good faith" when the person seeking relief invokes the jurisdiction of the bankruptcy court for purposes inconsistent with the aims and purposes of the bankruptcy code. *Id.* Such a determination of the debtor's "bad faith" depends largely on the court's evaluation of the debtor's financial condition and motives surrounding the filing of the petition. *In re Taylor*, 103 B.R. 511, 521 (D.N.J.1989), *aff'd*, 913 F.2d 102 (3d Cir.1990); *see also, Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986). The existence of "bad faith" depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case. *Id.*

The true test of whether a debtor has made a filing in "bad faith" is whether there is some possibility of successful reorganization without inordinate delay and whether the debtor entered the bankruptcy

or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause ...

process with any real intention to reorganize rather than for purposes of delay. *See In re Marion Street Partnership*, 108 B.R. 218, 223 (Bankr.D.Minn.1989). In the case at bar, the court is satisfied that the debtor filed its petition with the intent to reorganize, not merely delay FGH in its foreclosure action. The court emphasizes the fact that the Hotel in question is an ongoing business staffed with over one hundred (100) employees and thus, the debtor's principals are not the only individuals affected by the bankruptcy petition. These facts lend credence to the argument that the petition was not filed solely to buy time to help the individual principals of the partnership. While the court is cognizant of the fact that the debtor filed its petition on the eve of the scheduled sheriff's sale, such a factor is not necessarily to be construed as a "bad faith" filing. *Id.* Moreover, the fact that the debtor may have insufficient cash flow to cover its debt service payments to FGH is not controlling since most chapter 11 debtors are having difficulty paying debt service at the time of filing. *Id.* Therefore, the court concludes, after a thorough review of the debtor's petition and the surrounding circumstances, that the debtor was not motivated by "bad faith" in filing its petition and that its current financial condition justifies the filing of a voluntary petition in bankruptcy.

Having concluded that the debtor's petition was filed in good faith, the court will now examine FGH's motion for an order granting relief from the automatic stay.

**Relief From the Automatic Stay Pursuant to § 362(d)**

FGH seeks relief from the automatic stay under both prongs of § 362(d).[6] FGH argues initially that relief from the automatic stay is appropriate because the debtor has no equity in the Hotel and the Hotel

is not necessary to an effective reorganization that is in prospect. *See* 11 U.S.C. § 362(d)(2).

With regard to whether the debtor has any equity in the Hotel, it has been stipulated that the FGH's debt exceeds the value of the Hotel and that the debtor has no equity. Thus, FGH is an undersecured creditor and the first requirement of § 362(d)(2) is deemed satisfied.

■■■ Whether or not the Hotel is necessary for an effective reorganization requires a more in depth analysis of the factual situation of the debtor. In this regard, the burden is on the debtor to demonstrate that the property is necessary for its reorganization efforts. 11 U.S.C. § 362(g)(2). As the United States Supreme Court stated, such a showing must demonstrate that: 1) the property is essential for an effective reorganization that is in prospect; and 2) there is "a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Assoc. v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). While the debtor need not prove that the plan will actually be confirmed, the proof cannot be entirely speculative and there must be some evidence that the plan is achievable. *See, Frankford Trust Co. v. Dublin Prop. (In re Dublin Prop.)*, 12 B.R. 77, 80 (Bankr. E.D.Pa.1981).

■■■ In the instant case, the debtor filed its petition on July 7, 1992 and, at the time the within motions were filed, the case was not even four (4) months old. Given the early stage in the proceedings, the debtor has provided ample evidence to support a finding that there is a reasonable possibility of a successful reorganization within a

---

**6.** Section 362(d) provides: ...
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

reasonable period of time. *See In re Marion Street Partnership*, 108 B.R. at 225. In particular, the debtor has indicated that, to the extent necessary to fund a plan, it has a source of funding available from its limited partners.[7] Moreover, as the record shows, the Hotel is an ongoing business with over one hundred (100) employees and has ongoing contractual agreements with several airlines to provide guaranteed rooms. In addition, the Hotel has a number of contractual commitments for private parties in its restaurant and catering facilities. Finally, the debtor has been generating sufficient revenues to pay its expenses and to pay FGH pursuant to the consent cash collateral order entered by this court on October 20, 1992.

As the United States Supreme Court stated in *Timbers*, "the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan." *Timbers*, 484 U.S. at 376, 108 S.Ct. at 633. Had FGH allowed the debtor more time to develop its reorganization efforts before bringing the within motion, the debtor would have been required to make a stronger showing. *See In re Marion Street Partnership*, 108 B.R. at 225. Nevertheless, at this early stage in the proceedings, the debtor has met its burden imposed by § 362(g)(2).

FGH also argues that relief from the automatic stay should be granted because its collateral is not being adequately protected. *See* 11 U.S.C. § 362(d)(1). In support of its argument, FGH contends that if the stay is prolonged and the value of the collateral is not preserved, FGH will suffer injury. On this basis, FGH believes it is entitled to either relief from the stay or adequate protection as a condition to continuation of the stay.

As an undersecured creditor, FGH is not entitled to payment for any damages that it may suffer as a result of the delay in foreclosure occasioned by the filing of the debtor's bankruptcy petition. *See Tim-*

bers, 484 U.S. at 370, 108 S.Ct. at 630. In a situation such as this one, the only compensation available to the FGH is payment for any decline in the value of the Hotel during the term of the stay. *Id.; see also, In re Marion Street*, 108 B.R. at 224.

In the case at bar, Fitzpatrick, testifying for FGH, agreed with the debtor's witnesses that the projections for the Hotel will allow the average daily room rate to increase. Fitzpatrick further conceded that occupancy at the Hotel has increased during the past year. Moreover, both sides' witnesses agreed that the Newark Airport hotel market has bottomed out and should slowly improve. On the basis of this testimony, the court concludes that the Hotel is surely not declining in value and for the most part is likely increasing in value as time passes. Moreover, FGH has made no argument against the competency or adequacy of the current management of the Hotel. Thus, FGH's interest in the Hotel is being adequately protected, no adequate protection payments are necessary given the current situation, and FGH is not entitled to relief from the automatic stay pursuant to § 362(d)(1).

Having concluded that FGH's motion for relief from the automatic stay or for payment of adequate protection payments is denied, the court will now rule on the debtor's request for an extension of the exclusivity period in which to file a plan of reorganization.

### Extension of Debtor's Exclusivity Period Pursuant to § 1121(d)

The courts authority to grant the debtor's request for an extension of its exclusivity period is found in § 1121(d), which states:

On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, *the court may for cause reduce or increase the 120–day period or the 180 day-period referred to in this section.*

---

7. The court notes that FGH's only argument with respect to the debtor's ability to reorganize is that the debtor will be unable to identify a

third-party investor or buyer in a reasonable period.

11 U.S.C. § 1121(d) (emphasis added). Since the debtor seeks the extension, the burden is on it to demonstrate the existence of good cause. *See In re Pine Run Trust, Inc.,* 67 B.R. 432, 434 (Bankr. E.D.Pa.1986). As the legislative history to § 1121(d) indicates, the legislature intended that the granting of an extension would be based "on a showing of some promise of probable success [for reorganization]." 11 U.S.C.A. § 1121(d) (Historical and Revision Notes, S.Rept. No. 95–989). Further, "[a]n extension should not be employed as a tactical measure to put pressure on parties in interest to yield to a plan they consider unsatisfactory." *Id.*

■■■ The court notes that FGH's principal argument in opposition to the debtor's request is that the debtor does not offer any justification in its motion papers for preventing creditors from the opportunity to propose their own plan. FGH furthers states that it would like the opportunity to propose its own plan, and, in a case like this with a simple capital structure and where the debtor is clearly insolvent, there is no just reason to delay that happening. The court disagrees.

The purpose of the debtor's exclusivity period is to make a chapter 11 filing attractive enough to encourage ailing businesses to seek reorganization without unduly delaying creditors. *See In re Pine Run,* 67 B.R. at 434. If the chapter 11 provisions did not enable the debtor to remain in control for at least some period of time, debtors would likely avoid the provisions of chapter 11 reorganization until it would no longer be an effective remedy. *Id.* at 435, *relying on,* H.R.Rep. No. 595, 95th Cong., 2d Sess. 231–232 (1978), reprinted in U.S.C.C.A.N.1978, pp. 5787, 6191.

As its basis for relief, the debtor offers a number of factors that it believes lend credence to its request for an extension. While the court is not apt to accept all of the debtor's reasons for an extension as warranted, it does find merit with some, including: 1) a delay in the formation of an Official Creditor's Committee; 2) a lack of opportunity for the debtor to obtain its own appraiser of the Hotel in order to begin the process of negotiation with FGH on a consensual plan; 3) the pendency of accounts receivable claims of the debtor against Eastern Airlines and Continental Airlines; and 4) the pending appeal of the state court foreclosure proceeding and the debtor's counterclaim against FGH in the Appellate Division of the Superior Court of New Jersey. Finally, the court also notes that the debtor has obviously spent a considerable amount of time defending the within motions and the cash collateral dispute, all which arose very early in the administration of the case. Thus, although the traditional grounds for granting an extension— the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization [8]—may not have been established here, the court is nevertheless satisfied that the above facts, taken in conjunction with the overall intent of chapter 11 discussed above, warrant granting the debtor's request. Moreover, this is the debtor's first request for an extension of the exclusivity period, which has been made early in the case. This fact supports the argument that the debtor is not seeking an extension merely to pressure its creditors.

Therefore, after considering all the evidence, and keeping in mind the limitations imposed on the court's discretion by virtue of the legislative history of § 1121(d), the court nevertheless concludes that the debtor is entitled to an additional period of exclusivity and will grant the extension requested to March 26, 1993. The time in which to solicit and obtain acceptances for such a plan will correspondingly be extended to May, 26, 1993. In granting this extension, the court is mindful of the fact that FGH is the largest creditor of the debtor and the sole secured creditor, leaving aside any tax liens. The court recognizes that the debtor's unreasonable delay in filing a plan of reorganization could ultimately have an effect on the value of FGH's claim. Therefore, if the debtor fails to submit its plan by March 26, 1993 or receive the court's confirmation of said

---

8. *See In re Pine Run,* 67 B.R. at 435.

plan by May 26, 1993, FGH will be free to move for relief from the automatic stay.

### CONCLUSION

Based on the foregoing, FGH's motion to dismiss the debtor's petition is denied. In addition, FGH's motion for relief from the automatic stay or in the alternative adequate protection payments is also denied.

The debtor's motion seeking an extension of its exclusivity period in which to file a plan of reorganization is hereby granted and the exclusivity period shall be extended to March 26, 1993. The time in which to solicit and obtain acceptances to such a plan is correspondingly extended to May 26, 1993.