In re **CHAPIN REVENUE CYCLE MANAGEMENT, LLC, Debtor.**

No. 8:05–bk–13469–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 1, 2006.

Michael C. Markham, Johnson Pope Bokor Ruppel and Burns LLP, Clearwater, FL, for Debtor.

## ORDER ON MOTION FOR ORDER DETERMINING THAT SOFTWARE LICENSE AGREEMENT IS NOT AN EXECUTORY CONTRACT OR, IN THE ALTERNATIVE, FOR AUTHORITY TO ASSUME SOFTWARE LICENSE AGREEMENT

ALEXANDER L. PASKAY,
Bankruptcy Judge.

(Doc. No. 146)

THE MATTER under consideration in this Chapter 11 case of Chapin Revenue Cycle Management, LLC (Debtor) is the Debtor's Motion for Order Determining that Software License Agreement is not an Executory Contract or, in the Alternative, for Authority to Assume Software License Agreement (Doc. No. 131) (the Motion to Assume), and BNX Company's Response to the Debtor's Motion for Order Determining that Software License Agreement is not an Executory Contract or, in the Alternative, for Authority to Assume Software License Agreement (Doc. No. 146).

The Debtor and BNX Company (BNX), on August 4, 2004, entered into a Software License Agreement, termed an End–User License Agreement (the EULA), for the Debtor's installation and use of the UB Mater Software (the Software) developed by BNX (the Software). The EULA contains the following provisions:

"Licensee may use the software on as many computers desired; provided, all computers are directly owned and under the direct control of Licensee and located at the same physical address. . . .

You may also make such changes to the provided source code as necessary, within the current design framework of he SOFTWARE PRODUCT, to meet the needs of Chapin's clients. . . .

You may NOT reproduce and distribute any copies of the SOFTWARE PRODUCT with out [sic] prior written permission. . . .

The SOFTWARE PRODUCT is licensed as a single product. Its component parts may not be separated for use on more than one individual computer except as noted above. . . .

Without prejudice to any other rights, [BNX] may terminate this EULA if you fail to comply with the terms and conditions of this EULA. . . ."

(Exh. A to Stipulation of Facts on Motion for Order Determining that Software License Agreement is not an Executory Contract or, in the Alternative, for Authority to Assume Software License Agreement (Doc. No. 167) (Stipulation)).

The Debtor and BNX agreed that Bruce E. Singleton, the president of BNX, would provide services for maintaining and programming the Software for a monthly fee. The agreement provided that either party could cancel the services by thirty days

notice. By letter dated August 9, 2005, Singleton informed the Debtor that he would no longer be able to provide maintenance service for the software.

Following this notice, the Debtor began an interview process to find a potential replacement to service and maintain the Software. As a part of the interview process, during September and October 2005, the Debtor made available portions of the source code of the Software to several potential candidates: PowerBasic; Kevin Voell; Fred Buffington; and Micahel Mattias (the Candidates). This was done both to satisfy the Candidates that they could maintain and service the Software, and to satisfy the Debtor as to the Candidates' qualifications. To this end, the Debtor either provided remote access to its computers or provided copies of portions of the source code files via electronic mail to the Candidates. The Debtor also obtained a confidentiality agreement from each of the Candidates. (Exh. F to Stipulation).

BNX requested assurances from the Debtor that it was complying with the provisions of the EULA, specifically that it had not "removed any copy of either the UB Master Software program or any source code to any module in UB Mater Software to any outside location, and/or exposed same to any person not located at Chapin's office and employed by Chapin." (Exh. D to Stipulation). BNX expressed its concerns specifically with regard to the interview process by letter dated November 2, 2005. (Exh. G to Stipulation). The Debtor responded by obtaining from the Candidates acknowledgments that they had destroyed and not retained the copies of the source code that the Debtor sent to them. (Exh. H to Stipulation).

The Motion to Assume requests authority to assume the EULA. BNX responds that the Debtor breached the agreement by sending copies of the files to the candi-

dates and allowing the candidates remote access to the Software, and that the breach is a historical event that cannot be cured.

■ An executory contract is one under which both parties have "unperformed mutual obligations." *In re Gen Dev. Corp.*, 84 F.3d 1364, 1374 (11th Cir.1996). The EULA is an executory contract; BNX has an obligation to allow the continued use of the Software by the Debtor, and the Debtor has obligations to maintain the confidentiality of the Software.

A debtor, with court approval may assume an executory contract. 11 U.S.C. § 365(a). However, a debtor may not assume an executory contract or unexpired lease, under which there has been a default, unless the debtor "cures, or provides adequate assurance that the trustee will promptly cure, such default." 11 U.S.C. § 365(b)(1)(A). While the Debtor argues that it did not breach the terms of the EULA, based on the stipulated facts, this Court is satisfied that a breach did occur. The EULA allows the Debtor to use the Software only on computers directly owned and under the control of the Debtor, and located at the Debtor's physical address. The EULA prohibits the Debtor from reproducing or distributing the Software without BNX's written approval. By sending copies of portions of the source code by electronic mail and allowing remote access to the Software, to the Candidates, the Debtor violated the provisions of the EULA.

BNX argues that a finding that the Debtor's actions breached the EULA forecloses the assumption of the agreement by the Debtor. BNX argues that the Debtor committed an incurable nonmonetary default that cannot be cured. Cure of all defaults is a condition precedent to assumption of an executory contract; if the

Debtor cannot cure the default, the Debtor cannot assume the Agreement.

However, the debtor is not required to cure all defaults; the relevant exception to the cure requirement here is for a default relating to "the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease." § 365(b)(2)(D). The issue before this Court is whether this exception applies to historical nonmonetary defaults.

This phrase has been the subject of significant debate, and the parties here urge opposite results, each supported by authority for their position. The Debtor argues that this subparagraph excuses debtors from the requirement that it cure historical nonmonetary defaults. *See Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*, 360 F.3d 291 (1st Cir. 2004); *In re Walden Ridge Dev., LLC*, 292 B.R. 58, 66–67, n. 2 (Bankr. D.N.J.2003); *In re GP Express Airlines, Inc.*, 200 B.R. 222, 233–234 (Bankr.D.Neb. 1996). BNX argues that this subparagraph does not excuse the debtor from curing nonmonetary defaults unless those defaults relate to the satisfaction of a penalty rate or payment of a penalty. *See Worthington v. General Motors Corp. (In re Claremont Acquisition Corp., Inc.)*, 113 F.3d 1029 (9th Cir.1997); *In re Williams*, 299 B.R. 684, 686 (Bankr.S.D.Ga.2003).

 However, this Court is not required to rule on this issue. Even if this Court is inclined to agree with BNX's position as to the cure of historical nonmonetary defaults, there is one more step in the analysis. "Where the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default caused 'substantial economic detriment.'" *In re New Breed Enters.,*

*Inc.*, 278 B.R. 314, 321 (Bankr.E.D.N.Y. 2002) (*citing In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1092 (3d Cir.1990)); *Walden Ridge*, 292 B.R. at 67; *In re Vitanza*, No. 98–19611DWS, 1998 WL 808629, at *25 (Bankr.E.D.Pa. Nov.13, 1998) (finding that debtor's operation of sidewalk café was not a material default of lease). In *Joshua Slocum*, the court held that a provision allowing for termination of a lease if certain minimum sales figures were not realized was material and economically significant. *Joshua Slocum*, 922 F.2d at 1092 ("Certainly nothing could be as material or economically significant to landlords as some minimal assurance that there will be a positive return on their investments."). The court in *Walden Ridge*, on the other hand, held that there was no substantial economic detriment in allowing a debtor to close after a default under a time of the essence clause, as the seller would receive the full price in full, and allow the debtor to pay its creditors in full. *Walden Ridge*, 292 B.R. at 67. *Cf. New Breed*, 278 B.R. at 324 (holding time of the essence clause in real estate purchase contract was material and economically significant where the debtor acknowledged that the seller had suffered an economic detriment as a result of the default).

While there was in fact a default under the EULA, the default was not material, and BNX suffered no substantial economic detriment. The default occurred when the Debtor made portions of the source code of the Software available to the Candidates. The Debtor needed to find someone to provide maintenance service on the Software once Singleton informed it that his services would no longer be available. In fact, the letter Singleton sent to the Debtor contemplated the Debtor hiring someone to manage and service the software, and requested that the Debtor furnish to BNX copies of documents aimed at

maintaining the confidentiality of the Software. See August 9, 2005, Letter (Exh. C to Stipulation).

The information made available to the Candidates was only a portion of the source code. The source code emailed to some of the Candidates was not a functional version of the Software. The Debtor did not sublicense the Software to another company, nor did it open another location that utilized the Software. The Debtor needed to find someone to service the Software and sought to determine whether the Candidates were qualified to provide those services.

Moreover, the Debtor took steps to ensure the integrity of the process, making the Candidates sign confidentiality agreements. (Exh. F to Stipulation). The Debtor also obtained acknowledgments from the Candidates that they did not retain any information from the Software and that they deleted any portions of the source code from their computers. (Exh. H to Stipulation).

Based on the record, as stipulated to by the parties, this Court is satisfied that the Debtor did in fact default under the EULA, but that the default was not material and did not cause a significant economic detriment to BNX. The Debtor is not required to cure the default, a historical event, and should be authorized to assume the Software License Agreement. The Debtor's Motion to Assume should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Order Determining that Software License Agreement is not an Executory Contract or, in the Alternative, for Authority to Assume Software License Agreement (Doc. No. 146) be, and the same is hereby, granted. The

Debtor may assume the Software License Agreement.

DONE AND ORDERED.